## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**DONNA S. CONN** and **GREG CONN,**
her husband,

     Plaintiffs,

  v.

**UNITED STATES OF AMERICA** and
**MARYANN ZEIGLAR,** individually, and as
agent, servant, and employee of the United
States of America,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**2:05cv1173**
**Electronic Filing**

### OPINION

CERCONE, D.J.

  Plaintiffs commenced this action seeking redress for personal injuries sustained by Donna S. Conn in an automobile accident with defendant Mary Ann Zeiglar. Presently before the court is defendant Mary Ann Zeiglar's petition pursuant to the Federal Tort Claim Act ("FTCA"), and more specifically the Westfall Act, 28 U.S.C. § 2679(d)(3), to certify that she was acting within the scope of her employment at the time of the accident. For the reasons set forth below, the petition will be granted.

  Defendant Mary Ann Zeiglar is employed by the United States Department of Agriculture ("USDA") as a supervisory public health veterinarian ("Dr. Zeiglar"). Dr. Zeiglar supervises fourteen meat packing plants throughout several counties in Western Pennsylvania, including Washington, Fayette, Westmorland, Somerset and Greene counties. She inspects and oversees the operations at each plant to assure that the applicable health standards are being followed and the meat being processed is suitable for public consumption. She travels from one plant to another to conduct the inspections but will respond to more pressing issues that arise at any plant upon notification of a particular problem.

Pursuant to the USDA's directives, Dr. Zeiglar is required to schedule her inspections randomly so that the inspection at any particular plant cannot be predicted. She is given complete discretion in arranging her own schedule. She tries to appear at each plant on at least one occasion during a two week interval.

Dr. Zeiglar often travels from her home to the inspection location scheduled for that morning. Upon completion of the inspection, she travels to the next location and so forth. She also frequently leaves from a meat packing plant to travel home at the end of the day.

Dr. Zeiglar does not have a permanent work site. She maintains a small location in each plant where USDA forms are kept and where she occasionally stores small tools and/or her computer. She customarily carries knives and forms in her vehicle and keeps them with her as she travels from site to site. These tools and forms remain in the vehicle from day to day. Dr. Zeiglar also carries her computer to each site and takes it home at night to perform work-related matters as necessary.

Because she does not have a permanent work site, Dr. Zeiglar has been assigned a primary duty location ("PDL"), which is a small room at one of her assigned inspection sites, Alfrey's Sausage Company at Mt. Pleasant. Dr. Zeiglar completes forms and performs other routine tasks when she is at her PDL.

As a USDA inspector who travels on a daily basis, Dr. Zeiglar qualifies as a "high mileage driver." As such, she is given a choice of driving her own personal vehicle or a government-owned vehicle during the work day. Use of an employee's personal vehicle results in entitlement to mileage reimbursement, subject to certain restrictions. An employee is not permitted to use a government-owned vehicle for any personal tasks. In contrast, an employee using his or her personal vehicle can engage in personal tasks while en route to a particular job site, but will be responsible for any costs beyond the employee's regular or direct travel route. 41 C.F.R. § 301-10.8.

Dr. Zeiglar chose to drive her own vehicle and receive mileage reimbursement because it

2

was more convenient for her. The mileage reimbursement covered trips from home to inspection sites, between various plants, from an inspection site home and to and from her home to her PDL. The only time that Dr. Zeiglar is not reimbursed is if she both starts and ends her day at her PDL.

Dr. Zeiglar only receives partial reimbursement for her trips from her home to her PDL and visa versa. Dr. Zeiglar's home is forty-five miles from her PDL. Federal regulations limit reimbursement to and from an employee's PDL to the first twenty-five miles, so Dr. Zeigler receives reimbursement for twenty-five miles of the trip and has to pay the additional costs herself.

Dr. Zeiglar's usual route between home and her PDL consists of taking Route 119 to Route 88 to Route 21, and back to Route 88 and visa versa. At times, Dr. Zeiglar picks up her daughter while traveling home from work. On these occasions she takes virtually the same route to get to her daughter's school as she would take to get to her home. The only difference is that she turns off Route 21 and travels for two miles to her daughter's school. After the pick-up, she then drives back two miles to Route 21 and continues on the direct route home. On such occasions Dr. Zeiglar receives the regular twenty-five mile reimbursement for the trip home.

On September 6, 2002, Dr. Zeiglar's work day consisted of driving directly from her home to an inspection site, followed by a visit to a second plant, followed by travel to her PDL in Mt. Pleasant prior to the end of the work day. Dr. Zeiglar then started out on her usual route home and was intending to pick up her daughter along the way. Shortly after leaving her PDL, Dr. Zeiglar ran a red light and collided with Donna Conn's vehicle. The accident occurred at 3:40 p.m. along Route 119 in Fayette County, approximately five miles south of Dr. Zeiglar's PDL in Mount Pleasant. Dr. Zeiglar was still on her usual route home and was many miles from the turn off to her daughter's school, which was close to the end of her forty-five mile commute.

Under the Westfall Act, a federal employee is entitled to immunity from personal liability provided he or she was "acting within the scope of his [or her] office or employment" at the time

3

of the accident or wrongful act. In such situations the injured victim is not without a remedy, however. Instead, the Attorney General is required to defend any such civil action or proceeding. 28 U.S.C. § 2679(c).

When a claim is brought against a federal employee for certain tortuous conduct, the United States will be substituted as the defendant provided the Attorney General certifies that the employee was acting within the scope of his or her office or employment. 28 U.S.C. § 2679(d)(1). In the event the Attorney General refuses to certify that the employee was acting within the scope of his or her office or employment, the employee may petition the court to find and certify the employee's status. 28 U.S.C. § 2679(d)(3).[1] Through this two fold process Congress sought to assure that federal employees would either receive immunity or have the right to a court determination on all aspects of the immunity issue prior to trial. Melo v. Hafer, 13 F.3d 736, 747 (3d Cir. 1994). This process was designed "to assure that the decisions and conduct of federal public servants in the course of their work will not be adversely effected by

---

[1]Specifically, this section of the Westfall Act provides:

> In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action brought against the United States under the provisions of this title and all such references thereto, and the United States shall be substituted as the party defendant. A copy of the petition shall be served upon the United States in accordance with the provisions of Rule 4(d) (4) of the Federal Rules of Civil Procedure. In the event the petition is filed in a civil action or proceeding [the action or proceeding] may be removed without bond by the Attorney General to the district court of the United States for the district and division embracing the place in which it is pending. If, in considering the petition, the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court.

28 U.S.C. § 2679(d) (3).

fear of personal liability for money damages and for the burden of defending damage liability claims." Id. at 744.

The determination of whether an employee was acting within the scope of employment is governed by the substantive law of the site of the accident. Williams v. United States, 350 U.S. 857 (1995). Here, the parties essentially agree that Pennsylvania's agency law pertaining to respondeat superior liability is applicable.

On August 22, 2005, Donna and Greg Conn filed a complaint against Dr. Zeiglar as an agent, servant or employee of the United States and alternatively in her individual capacity. On December 12, 2005, the United States Attorney for the Western District of Pennsylvania refused to certify that Dr. Zeiglar was acting within the scope of her employment. The instant petition seeking certification followed.[2]

Dr. Zeiglar argues that she was acting within the scope of her employment because the use of her personal vehicle was necessary for her work as an inspector, and she received mileage reimbursement. She relies on case law addressing whether an employee was within the course of employment while driving. These cases typically address particular claims under Pennsylvania's Workmen's Compensation Act. Dr. Zeiglar contends that she easily meets at least two separate recognized grounds that result in a finding that the employee was within the course and scope of employment.

The government takes issue with Dr. Zeiglar's reliance on cases discussing whether an employee is within the "course of employment" in deciding entitlement to Workers Compensation Insurance benefits. It contends that Pennsylvania law draws a distinction between an employee being within the "course of employment" and an employee acting within the "scope of employment." The latter assertedly is a more narrow, stringent test permeated by a desire and intent to serve the needs of the master. It contends that this more stringent test must be satisfied under the Westfall Act, and the underlying facts fall short of the mark.

---

[2]Plaintiffs have filed a brief in support of the petition.

The government's position is unavailing for two essential reasons. First, while a determination that an employee was acting within the course of employment under Pennsylvania's Workmen's Compensation Act may not necessarily be conclusive on a scope of employment inquiry under any given fact pattern, in a number of areas such a determination centers on whether the employee was engaged in furtherance of the employer's business or affairs and requires the kind and degree of proof that will also sustain a scope of employment finding as well. Such is case here to the extent that precedent from this area of Pennsylvania law is applicable to the matter at hand. Second, even with the recognition that a scope of employment inquiry is more narrow and stringent, the inquiry must be resolved in Dr. Zeiglar's favor under the Supreme Court of Pennsylvania's precedent and the particular circumstances presented.

In the context of Pennsylvania's Workmen's Compensation Act, courts commonly use a general rule called the "going and coming rule" in determining whether an employee was within "the course" of his or her employment when an accident occurred. See Kadlecik v. L.N. Renault & Sons, Inc., 40 A.2d 866 (Pa. Super. 1945); Valenzuela v. Thrifty Rent-A-Car, 1995 U.S. Dist. LEXIS 17426, 3-4 (E.D. Pa. 1995). The "going and coming rule" provides that "an injury sustained while an employee is going to or coming from work does not occur in the course of employment unless at least one of the following exceptions is met: (1) claimant's employment contract includes transportation to and from work; (2) claimant has no fixed place of work; (3) claimant is on a special mission for employer; or (4) special circumstances are such that the claimant was furthering the business of the employer." Setley v. WCAB, 451 A.2d 10, 11 (Pa. Commonw. 1982); see also Biddle v. WCAB, 652 A.2d 807, 809 (Pa. 1995); White v. United States, 143 F.3d 232, 235 (5th Cir. 1998).

Here, Dr. Zeiglar was entitled to use of a government vehicle as a high milage driver and received reimbursement for traveling to and from work on a regular basis. She had no fixed place of employment and her home was the usual starting and ending point of her daily travels.

6

She traveled to different plants each day and carried work tools and supplies in her vehicle. She was entitled to reimbursement for the trip home on the day of the accident based on her completed itinerary. These facts satisfy the first, second and fourth exceptions to the going and coming rule and Dr. Zeiglar received Workmen's Compensation benefits for her own injuries sustained in the accident.

The United States does not challenge that Dr. Zeiglar was within the "course of her employment" at the time of the accident. Instead, it argues that in order to satisfy the more stringent "scope of employment" standard, the following criteria must be met: (1) the conduct in question must be the kind which the employee was employed to perform; (2) the conduct occurred substantially within authorized time and space limits; and (3) the conduct was actuated, at least in part, by a purpose to serve the employer. See Shuman Estate v. Weber, 419 A.2d 169, 173 (Pa.1980); Restatement (Second) of Agency § 228(1) (a)-(c). The government argues that because Dr. Zeiglar had completed her work for the day and was on her way to pick up her daughter, her conduct could not have been actuated, even in part, by a purpose to serve her employer. In addition, the fact that she was using her own vehicle and had left her PDL for the day purportedly placed her outside the scope of employment.

Pennsylvania law does recognize a distinction between "course of employment" and "scope of employment." Kemerer v. United States, 330 F. Supp. 731, 733 (W.D. Pa. 1971). A "course of employment" analysis is required under Pennsylvania's Workers Compensation Act and thus involves a statutory inquiry. Haddock v. Edgewater Steel Co., 103 A. 351 (1919). The analysis occurs in the context of a remedial setting and the phrase has been given a liberal and expansive construction. Id. (citing Dzikowski v. Superior Steel Co., 103 A. 351 (1918). Substantively, a course of employment finding requires the employee to have committed the action within the time and space limits of employment. Mauk v. Wright, 367 F. Supp. 961, 968 (M.D. Pa. 1973).

In contrast, a "scope of employment" determination arises from the doctrine of common

7

law which is designed to make an employer responsible for the acts of its employees where social morays so demand.  Scope of employment adds to time and space limits the requirement that the servant's activity must at least in part be actuated by a purpose to further the needs or interests of the employer.  Id.  Thus, there is a distinct difference in the origins and bases for placing injuries within the ambit of each of the inquiries and these differences may render decisions in the former area inapposite in the latter.  Cf.  Pickering v. Daniel J. Keating Co., 460 F.2d 820, 823 (3d Cir. 1972) (rejecting under New Jersey Law the argument that the modern trend no longer recognized a general distinction between scope and course of employment analyses).

Notwithstanding the above, where Workers Compensation cases are premised on whether the employee was engaged in or attempting to further the employer's business, such cases provide appropriate authority for analysis under the master/servant doctrine and resolving issues pursuant to a "scope of employment" inquiry.  See Kadlecik, 40 A.2d at 868 ("But testimony [from Workers Compensation cases] which establishes that an employee, off the premises, is actually engaged in the furtherance of the employer's business or affairs is the same kind and degree of proof required to make the master liable for the servant's negligence in an action of trespass.  The principle of those cases therefore is applicable and is controlling here."); see also Mauk, 367 F. Supp. at 966 n.9 ("A substantial number of the master-servant scope of employment cases are based on workers compensation.  However, such decisions are good authority in the present context.") (citing Kadlecik, 40 A.2d at 868).

Careful consideration of the development of Pennsylvania law in the area supports the proposition that where an employee's use of a private vehicle is necessary for and important to the employer's business, driving in furtherance of that business places the employee within the scope of employment.  See e.g. Cesare v. Cole, 210 A.2d 491 (Pa. 1965) (an employee's use of a vehicle is within the scope of employment where the employer directs the employee to use vehicle to cover travel from place to place or the use of the vehicle is reasonably necessary to furthering the employee's business); United States v. New Jersey Manufacturers Co., 583 F.

8

Supp. 579, 581 (E.D. Pa. 1981) ("Under Pennsylvania law, an employee's use of his own private vehicle must be necessary and important before the trip is considered in the scope of employment.").

The leading case reflecting an application of the above-referenced rule is Haddock v. Edgewater Steel Co., 106 A. 196 (Pa. 1919). There, the employee was directed to conduct an investigation at a distant location, prepare a report and deliver the report to his employer in Pittsburgh. After completing the investigation the employee returned to Pittsburgh after his employer's office was closed. The employee decided to return home and present his report the following day. The employee was injured while traveling home. It was held that the employee was still in the process of completing the assigned task and thus was engaged in furthering the employer's business at the time of the accident.

In Messer v. Manufacturers L. & H. Co., 106 A. 85, 86 (Pa. 1919), an employee on call during vacation was directed to inspect a pumping station and was injured in an automobile accident on his way home after completing the work. The employee was found to have been "actually engaged in the furtherance of the business or affairs of the employer" as "his compliance with [the employer's] requests continued from the time he left home until he finally returned."

Similarly, in Cymbor v. Binder Coal Co., et al., 132 A. 363 (Pa. 1926), an employee was assigned the responsibility of returning to the employer's mine every night to set the pumps so that accumulating water would be removed from the mine when work resumed the following day. The employee lived close to the mine and walked to and from the mine to perform this task, crossing over railroad tracks each time. He was compensated on an hourly basis and received extra pay for starting the pumps at night. On the night in question the employee was killed crossing the tracks on his way home after having started the pumps. After observing the "undoubted general principle that an injury sustained by an ordinary employee, while going to and from work, not on the employer's premises, is not compensable," the court opined that the

9

nightly trip "was in furtherance of the master's business" and the employee remained within the scope of employment while both going to and returning from the mine. Id. at 442.

In Kelling v. Froemming Bros., 135 A. 129 (Pa. 1926), the camp boss of construction work of the defendant company was directed to drive from the work site to two neighboring towns in order to secure the services of three truck drivers. The employee engaged in this task on Sunday morning and was accompanied by his young son and three other employees. The camp boss proceeded to each town but failed to secure the needed drivers after having reached the second town. He then informed the others that they would proceed further on the National Pike. An automobile accident occurred Southeast of the second town, resulting in the employee's death. In response to arguments that the employee was no longer engaged in the employer's business and had embarked on a Sunday drive after leaving the second town, the court observed that in order to complete his employer's directive it was necessary not only for the employee to drive from town to town in search of the drivers, but also to return home. His duties thus continued from the time he left camp until his return, and as a result he "was 'actually engaged in the furtherance of the business or affairs' of his employer at the time he received the injury which resulted in his death." Id. at 130.

Although the above cases were decided in the context of Pennsylvania's Workmen's Compensation Law, the critical determination in each case was whether the employee, off premises, was actually engaged in furthering the employer's business or affairs when injured while traveling home. In each case the Supreme Court of Pennsylvania drew a distinction between a regular hourly employee who travels to and from a definitively fixed place of work and one who must travel in order to perform an assigned task. The court consistently recognized that in the latter circumstance return travel was not only within the "course of employment," it likewise reflected activity undertaken in furtherance of the employer's business. These cases thus provide persuasive authority bearing on the inquiry at hand.

Were the above cases the only authority to be considered, the matter at hand would be

10

difficult to decide. But a number of courts applying Pennsylvania law likewise have recognized the same principle in respondeat superior cases. For example, in Kadlecik, a wine salesman injured the plaintiff while traveling toward home after concluding the primary business for that day. Kadlecik, 40 A.2d at 867-68. The salesman had an assigned regional territory wherein he would (1) service established customers by delivering advertising and samples of available products, and (2) solicit new customers by calling on taverns. The salesman received weekly wages and a stipend for expenses which included the cost of running his car. His duties also included promotional calls on licensed taverns outside his assigned district and calling upon and adjusting differences between the company and customers when requested to do so. The employee was free to visit any customer, using whatever travel route he chose, at any time of the day or night.

On the night in question, the employee finished adjusting a complaint about bad champagne and proceeded toward home at about 1:00 a.m. while entertaining the possibility of stopping at additional taverns on the way if they were still doing business. On cross examination, the employee admitted that he had made a prior statement that the place of adjustment was his last stop, he was on his way home and he had concluded all business for the night. Id. at 868. The jury resolved the issue of agency against the employer. Against a challenge by the employer on appeal, the Superior Court of Pennsylvania opined:

> But even if Wagner had "concluded all business" for the day and was on his way home, his employer was still liable for his negligence. This is not a case involving an injury of an employee off the premises on his way home at the end of regular working hours. Wagner was on a special mission, authorized by the president of the company and there is no evidence of an unequivocal act which took him out of the course and scope of his employment prior to plaintiff's injury. In the absence of such evidence it is unimportant whether he actually intended to make other business calls on his way home.

Id. The court reasoned that the principle of the above-referenced Workmen's Compensation cases was applicable and controlling on the issue of whether the employee was sufficiently engaged in the employer's business or affairs to make the employer liable for the employee's

11

negligence.

Judge Gourley reached a similar conclusion in Kemerer. There, the employee had attended a convention on government business in Atlantic City, New Jersey. On his return trip home the employee also was required to attend a conference in Bradford, Pennsylvania. At that conference the employee prepared a letter complaining of the hotel charges from the Atlantic City hotel. At the conclusion of the conference in Bradford, the employee returned to the Murrysville area and stopped for dinner. After leaving the restaurant, the employee proceeded with the intent of purchasing a magazine and going to the post office in Monroeville to mail the letter, although the post office in Murrysville was actually closer to the employee's home. En route to the post office, the employee had an automobile accident with the plaintiff's truck, causing the employee's death and substantial damages to the plaintiff and his vehicle. The USDA disputed whether the employee was within the scope of employment at the time of the accident, contending that Pennsylvania law will not recognize respondeat superior liability where an employee is merely within the course of employment but not the scope of employment.

Judge Gourley observed that "the test of respondeat superior is generally whether the employee's acts are an incident of, a part of, or in furtherance of, the employee's employment." Kemerer, 330 F. Supp. at 733 (citing Herr v. Simplex Paper Box Corp., 198 A. 309 (Pa. 1938) and Frankel v. Moody, 393 F.2d 279 (3d Cir. 1968)). The learned judge perceived the ultimate question as whether the act complained of was intended in any way to serve the interest of the master. Id.

The court concluded that the employee was within both the course and scope of employment and thus certification under the FTCA based on the doctrine of respondeat superior was appropriate. The employee was on constant travel status and received mileage for the use of his personal vehicle. He had no precise time limits on his travel and his use of the distant post office was known to and authorized by his superiors. He thus was within the "space limits" in traveling to that post office. The employee also was engaged "in the kind of work for which he

12

was employed" and his intent to travel to the post office was actuated by a desire to serve the government, at least in part, notwithstanding that the cut-off time on his travel voucher was recorded as terminating three hours prior to the accident and that he had stopped for dinner at a restaurant. Id. at 734. The letter of complaint arose out of his employment and driving to and from the Monroeville post office to mail letters involving government business was the kind of work he was employed to perform. Thus, the employee was pursuing his employer's interests when the accident occurred.

A similar conclusion was reached in the Simpson v. United States, 484 F. Supp. 387 (W.D. Pa. 1980). There, a marine recruiter had been ordered to engage in recruiting on a constant basis in order to obtain additional recruits. The recruiter was transporting three civilians home from a bar after discussing the marine corps with them and another individual. Two of the civilians had provided the recruiter with leads in the past and one had supplied additional leads on the night in question. The other civilian was a potential candidate for recruitment. An accident occurred during the trip and the potential recruit in the rear seat was killed.

The government contended the recruiter was on a frolic because there were beer cans in the vehicle and he had agreed to take two women home before proceeding to the third passenger's home to obtain additional information about possible recruits. The court rejected its contention, however, and concluded that the employee was within the scope of his employment, at least in part, reasoning that the challenges in securing enough volunteers to serve necessarily required the recruiter to explore every lead and maintain all possible contacts. Id. at 394.

The Supreme Court of Pennsylvania repeatedly has extended the above principles of respondeat superior liability to situations where the use of a private vehicle is either vitally important or reasonably necessary to the employer's business. In Gozdonovic v. Pleasant Hills Reality Co., 53 A.2d 73 (Pa. 1947), a real estate salesman used his personal car to transport prospective customers to potential purchase sites in outlying subdivisions. While en route to pick up a customer the salesman negligently parked his vehicle on a steep grade without

13

engaging the emergency brake. The unmanned vehicle rolled down a hill and collided with the plaintiff's vehicle. The plaintiff sustained serious injuries as a result. The court held that the salesman was acting within the scope of his employment because the use of his personal vehicle was necessary to the employer's business of selling real estate. It was understood that prospective customers were not expected to travel for miles by public transportation or their own efforts or to walk great distances after they arrived at a subdivision, which made the employee's use of his personal vehicle reasonably necessary to the pursuit of the employer's business.

In Sinclair v. Perma-Made Co. Inc., 26 A.2d 924 (Pa. 1942), a door to door salesman of pots and pans was required to set up and conduct dinner parties in order to gain leads on prospective customers. After a dinner party the employee would call upon each quest in an effort to interest them in purchasing the displayed cooking ware. The employee used his own automobile, was required to pay for all gas and maintenance expenses, received no traveling expense, fixed his own routes of travel and was in sole control of the actual operation of the automobile. While traveling from the home of one prospective customer to another's, the employee hit and injured the plaintiff. In response to the employer's challenge against respondeat superior liability, the Supreme Court opined:

> An employer, in the furthering of whose business it is of vital importance that an automobile shall be used, cannot, by providing that the automobile shall be furnished by his agent or servant, shift responsibility from himself, for an injury negligently caused by the operation of the automobile. Owen could have not performed his duties, in the manner required by his employer, unless he made use of an automobile. Under such circumstances, defendant is liable for the negligent operation of the vehicle so used.

Id. at 926.

The same principle was recognized in Belles v. Mallory, 85 A.2d 129 (Pa. 1952), where the employee used his own vehicle to travel to various oil wells and had elected to travel to an on-sight tool house some 1,500 feet away in order to pick up parts and tools weighing approximately twenty-five pounds and transport them back to the pump he was servicing. Id. at 129. Against a challenge by an employer that the use of an automobile was not necessary to

14

carrying on its business, the Supreme Court opined:

> the test of "vital importance" or "reasonable necessity"-is that, if an employee uses his automobile in furtherance of his employer's business but primarily for his own convenience, such use being therefore a matter of indifference to the employer, the latter is not legally responsible for the operation of the car and consequently is not liable in damages to a person injured thereby; on the other hand an employer cannot evade liability-if the automobile is a necessary instrumentality for the effective conduct of his business-merely because it is the employee who himself owns, maintains and operates the vehicle.
>
> In order the service the pumps on the premises Cain was obligated to carry tools from the tool shed to the service pump positions which were located as far away from the tool house as seven miles. This he had to do either on foot or in his own car since no other means of transportation was readily available to him and it is obvious that, if he were to perform his job properly, it was necessary for Cain, on many occasions to use his automobile. Whether it was also necessary that he do so in going from the pump he was servicing at the time of the accident, to the tool house and back, we are convinced was a question for the [finder of fact to resolve].

Id. at 130. (quoting in part Gozdonovic, 53 A.2d at 75).

The above referenced authority clearly compels a finding that Dr. Zieglar was acting within the scope of her employment at the time of the accident. She was a high mileage driver for the USDA with no fixed location for performance of her primary task, which was to conduct random and unannounced inspections at fourteen different meat packing plants throughout five counties on a rotating yet random basis. Dr. Ziegler was given complete control over her daily travel schedule. Traveling from her home to these various inspection sites and back was essential in performing this basic function. She carried tools, forms and a personal computer in her vehicle while traveling from site to site. She was paid mileage reimbursement for traveling from home to her first inspection site of the day, from one inspection site to the next, and from the last inspection site to home (except when she both started and ended her workday at her PDL). Dr. Zeiglar was entitled to a mileage reimbursement for her travel home on the day in question. Under these circumstances Dr. Zeiglar's use of her private vehicle was vitally important and reasonably necessary to carrying out the employer's business. And because her travel schedule

15

had to be consistently different from day to day and her assigned duties could not be accomplished without the use of a vehicle, Dr. Zeigler was engaged in her assigned responsibilities from the time she left her home until she returned, at least were no deviation occurred in her direct travel routes for personal reasons. Such was the case on the day in question. Accordingly, the fact that she had "finished" her inspections for the day and had driven approximately five miles from her last work site did not remove her from the scope of her employment.

Finally, the government's contention that Dr. Zeiglar's intent to pick up her daughter on the way home removed her from the scope of her employment equally is misplaced. It is well-settled under Pennsylvania agency law that the mere existence of dual motivation will not relieve the employer from liability where the conduct of the employee benefitted the employer at least in part and thus served to place the employee within the scope of employment. See Lindenmuth v. Steffy, 98 A.2d 242, 244 (Pa. Super. 1953) ("a slight deviation from the strict course of duty, even for a purpose of the employee, will not relieve the master from responsibility.") (collecting cases in support)). Similarly, the fact that an employee has chosen a route that will enable him to combine work-related activities with personal ones does not remove the employee from the scope of employment. Id.; see also Anzenberger v. Nickols, 198 A.2d 309, 311 (Pa. 1964) ("the fact that [the employee] was returning by a somewhat circuitous route and had conducted some purely personal business en route, does not necessarily place him beyond the scope of his employment."); Stoops v. Mulhorn, 117 A.2d 733, 736 (Pa. 1955) ("the mere fact that an agent selects such time and route as will enable him, to some extent, to combine business and pleasure, or that, for his personal benefit, he incidentally deviates from the course of his employment, is not necessarily inconsistent with the purpose of the agency, and the principal is liable for the acts of the agent performed within the scope of his employment.").

Here, Dr. Zeiglar had just begun the trip toward home and had proceeded approximately five miles along her normal route. She was still within the twenty-five mile allowance for

16

reimbursement and had not deviated from her normal course of travel in any way. Her return home was essential and necessary to the completion of that day's inspections and related work as well as the initiation of a new set of inspections the following morning. The fact that she intended to make a minor deviation from the most direct route home in order to pick up her daughter from school did not place her beyond the scope of her employment. It follows that the travel in which Dr. Zeiglar was engaged at the time of the accident was essential and necessary to performing her assigned duties and the fact that Dr. Zeiglar had the intent to engage in a very slight deviation from her direct travel route approximately forty miles down the road is meaningless.

For the reasons set forth above, the Court finds that Dr. Zeiglar was acting within the scope of her employment at the time of the accident. The use of her private vehicle was vitally important to and reasonably necessary for the performance of the employer's business and she was driving in furtherance of that business within the meaning of the master/servant relationship at the time the accident occurred. Dr. Zeiglar's petition to so certify pursuant to 28 U.S.C. § 2679(d)(3) will be granted.

David Stewart Cercone
United States District Judge

17

cc:    Maria Spina Altobelli, Esquire
Mears, Smith, Houser & Boyle
127 North Main Street
Greensburg, PA 15601-2403

William R. Caroselli, Esquire
Caroselli, Beachler, McTiernan & Conboy
312 Boulevard of the Allies
Eighth Floor
Pittsburgh, PA 15222

Michael C. Colville, AUSA

Robert J. Grimm, Esquire
Swartz Campbell LLC
Suite 4750
U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219

18